.RACHEL VANHOUTEN, appellant,

v.

JOSEPH C. HALL et al., respondents.

[Submitted June 25th, 1907.   Decided November 18th, 1907.]

A testatrix devised and bequeathed property to a grandson for life, and, if he should die without issue, gave one-half thereof to E. H. and the other half to be equally divided between Caty, and, if she be dead, her children, and the child or children of George in fee. George died before the life tenant, leaving one child; Caty died before the life tenant, leaving six children.—*Held*, that the one-half must be distributed between Caty's children and George's child *per stirpes* and not *per capita*.

On appeal of Rachel VanHouten and others from a decree advised by Vice-Chancellor Bergen, whose opinion is reported in *71 N. J. Eq. (1 Buch.) 626.*

*Mr. Preston Stevenson,* for the appellants.

*Mr. Robert Williams,* for the respondent.

The opinion of the court was delivered by

SWAYZE, J.

The question involved is the construction of the following clause in the will of Rachel VanHouten:

"I give the remaining one-third of said residue to my grandson, the said Adrian Post, and, if he shall die leaving children, then to his children, but, if he shall die without issue, then I give one-half thereof to Elizabeth Hall and the other half to be equally divided between Caty, and, if she be dead, her children, and the child or children of George, in fee."

Caty was Catherine VanHouten, a daughter of the testatrix; George was a son and Adrian was a grandson. We have heretofore decided that Adrian took only a life estate under the will. *Post* v. *VanHouten, 41 N. J. Eq. (14 Stew.) 82; affirmed,*

*43 N. J. Eq.* (*16 Stew.*) *296.* He died in November, 1905. Catherine VanHouten died in 1897, leaving six children her surviving, the appellants; a seventh had died years before. George Post died in 1884, leaving an only child, William H. Post, who died in 1891; the respondent has succeeded by will to his rights.

The appellants claim that the distribution should be *per capita;* the respondent that it should be *per stirpes.* The learned vice-chancellor took the latter view.

The question is not exactly whether the gift to Catherine VanHouten's children is substitutionary in the technical sense as distinguished from a substantive original gift. This distinction sometimes becomes important where the legacy would lapse if it was only *substitutionary,* as in a case where the original legatee dies before the testator. No such difficulty arises here. Assuming that the children of Mrs. VanHouten take as original or alternative legatees, the question is do they take each a several share in his own right or jointly their mother's share by way of representation. It might avoid confusion to say that they are representative legatees, but the books use the word "substituted," and it is not likely to lead to confusion with the more technical use of the words if the different question to be decided in each case is kept in mind. In the present case the question is, what share do they take?

No doubt the general rule is that where there is a gift to the children of several persons, they take *per capita* (*2 Jarm.* (*Randolph & Talcott's ed.*) *756*), and the rule prevails even where there is a devise or bequest to one person and the children of another. The latter branch of the rule dates from *Blackler v. Webb, 2 P. W. 383,* and notwithstanding the criticism of Chief-Justice Kirkpatrick in *Roome v. Counter, 6 N. J. Law* (*1 Halst.*) *111,* is recognized in this state. *Smith v. Curtis, 29 N. J. Law* (*5 Dutch.*) *345; Fisher v. Skillman's Executor, 18 N. J. Eq.* (*3 C. E. Gr.*) *229; Macknet's Executor v. Macknet, 24 N. J. Eq.* (*9 C. E. Gr.*) *277, 294; Thornton v. Roberts, 30 N. J. Eq.* (*3 Stew.*) *473, 477; Burnet v. Burnet, 30 N. J. Eq.* (*3 Stew.*) *595, 599,* but the courts have not failed to express dissatisfaction with it, and it

is said that this mode of construction will yield to a very faint glimpse of a different intention in the context. *2 Jarm. 757.*

Chancellor Zabriskie, in *Fisher* v. *Skillman, supra,* disregarded it because the will showed the testator's design to make his children equal, and so where there is a gift to the children of several, by way of substitution, the children will generally take *per stirpes. 2 Jarm., supra; Price* v. *Lockley, 6 Beav. 180; Congreve* v. *Palmer, 16 Beav. 435; 23 L. J. Ch. 54; Shailer* v. *Groves, 6 Hare 162.*

An examination of the will in the present case leads us to think the rule was correctly applied by the vice-chancellor. The general scheme of the will required the payment of one-third of the income of the residue to Catherine, one-third to George and one-third to Adrian (subject to an annuity to his mother), until the death of George, and a distribution of the estate at George's death. The testatrix provided, however, that if Adrian died before George without issue, one-half of the income should go to Elizabeth Hall and one-half should be divided equally between Caty and George. This provision as to the distribution of the income in case of Adrian's death before George is very much like the provision for distribution of principal at Adrian's death after George which is now before us. Both provisions give half to Elizabeth Hall, and both distribute the other half between Caty and George or their representatives. Since the principal was not to be distributed until George's death, his child or children were put in his stead in the later clause, and as this directed the attention of the testatrix to the possibility of her children dying before her grandson, she naturally made the same provision for the substitution of Caty's children as for George's child or children. The will evinced a design to treat the two families alike. The case in this respect resembles *Brett* v. *Horton, 4 Beav. 239,* cited in *2 Jarm., supra;* reported also in *10 L. J. Ch. (N. S.) 371; Overton* v. *Banister, 4 Beav. 205.*

The testatrix was not careless in her use of language. In the clause immediately preceding the one in question she devised a third part of her Main street property in a certain contingency to "Catherine and Adrian and their children in fee." And

Chancellor McGill properly held that the children shared equally with Catherine and Adrian. But when the testatrix came to the disposition of Adrian's share, in the event of his death without issue, she was careful to use different language. Instead of saying that the share should be equally divided between Caty and her children and the child or children of George she inserted the words "if she be dead," thus evincing a clear intent that the children should not share with their mother, but should take her place in the contingency mentioned.

The use of the word "between" instead of "among" tends in the same direction. No doubt "between" may sometimes mean "among," but where other circumstances favor a division into two parts only, there is every reason for adhering to the primary meaning.

The decree should be affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, HENDRICKSON, PITNEY, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL—13.

*For reversal*—None.