## Sam Ainsworth v. George D. Briggs.

### Decided February 26, 1908.

**1.—Will—Incompleteness—Evidence.**

A testator wrote two holographic wills at different times, devising all of his property to different persons; the probate of the last will was contested on the ground that it was incomplete and never intended by the testator to take effect; the only evidence of incompleteness was in the word "witness" at the bottom of the will and the absence of signatures after or under that word. Held, that while the numerical weight of authority might be in favor of the proposition, that the natural inference to be drawn from an attestation clause at the foot of a testamentary paper is that the writer intended to execute it in the presence of witnesses and considered it incomplete until that was done, such inference may be overcome by the testimony of witnesses as to the declarations of the testator that he had willed his property to the person named in the alleged incomplete will.

**2.—Will—Validity.**

Unlike deeds, delivery is not essential to the execution or validity of wills; and when an instrument has been executed in such a manner as to constitute it a valid will, it remains such until revoked by the making of another will or by the testator's destroying, cancelling or obliterating the same or causing it to be done in his presence.

**3.—Wills—Application to Probate—Issue.**

In determining whether or not an instrument should be probated as a will, the courts are not required to construe the instrument and determine the rights of persons claiming it any further than is necessary to determine whether or not the particular instrument constitutes the will of the alleged testator.

**4.—Wills—Contest—Evidence.**

In a contest over the probate of two wills by the same testator, evidence considered, and held to require the probate of the will last made.

Appeal from the District Court of Robertson County. Tried below before Hon. J. C. Scott.

*W. O. Campbell,* for appellant.—When a paper testamentary in form and character is wholly written and signed by a person competent to make a will with the intention of making a will, its execution as a written will is complete under the statute of wills of this State, and it takes effect and becomes operative as his will after his death, unless it has been revoked by him by one of the modes pointed out by the statute, and when it is produced in court on an application for its probate it may be probated on proof by two witnesses of his handwriting, notwithstanding such instrument may contain a clause demanding that it be kept secret, and that the envelope enclosing it shall remain sealed until after his death, but was never enclosed in an envelope or otherwise. Rev. Stats., 1895, arts. 5335-5337, 1900, 1904; Kelly v. Settegast, 68 Texas, 13; Lawson v. Dawson, 21 Texas Civ. App., 361; 30 Am. & Eng. Ency. of Law, p. 551; "Holograph Wills," p. 591; "Evidence of Completion," pp. 578-9, and notes; "Extraneous Papers;" Schouler on Wills, sec. 255, 275 and note, 279, 393 and note on pp. 401, 403, 468.

When a will has been executed in accordance with the statute the legal presumption is that it continued to exist until the death of the testator, and when it is found after his death and it is shown by the evidence that it was in his possession at the time of his death this presumption can not be overcome except by proof of its revocation in one of the modes pointed out by the statute. Rev. Stats., 1895, arts. 5335-5337; Morgan v. Davenport, 60 Texas, 230; 1 Jarman on Wills, p. 268 and notes; Schouler on Wills, secs. 383-387.

The will dated March 1, 1904, having been duly executed as required by law and disposing of the testator's property in a manner wholly inconsistent with the will dated March 19, 1895, operates as a revocation of the said former will without express words of revocation. Schouler on Wills, sec. 406.

*Lane & Woods,* for appellee.—The court did not err in holding that the will dated March 19, 1895, was the last will and testament of W. B. Briggs, M. D., and admitting same to probate, and did not err in refusing to probate the will of March 1, 1904. Vickery v. Hobbs, 21 Texas, 570; Phelps v. Ashton, 30 Texas, 348; 30 Am. & Eng. Ency., title, Wills, page 553 (3), also page 624 (2) and notes, and page 625 and notes, also page 643; 49 Century Digest, sec. 254, column 315, and authorities there cited; Mealing v. Pace, 14 Ga., 596; Plater v. Groome, 3 Md., 134; In re Barber's Will, 92 Hun, 489, 37 N. Y. Supp., 235; Guthrie v. Owen. 21 Tenn. (2 Humph.), 202, 36 Am. Dec., 311.

KEY, ASSOCIATE JUSTICE.—On the 19th day of March, 1895, Dr. Wellington D. Briggs made a will by which he bequeathed most, if not all, of the property then owned by him to his brother, George D. Briggs, designated to be executor of that will. Thereafter he executed another instrument, which reads as follows:

"The State of Texas, ⎱
　County of Robertson.⎰

"Know all men by these presents: That I, W. B. Briggs, M. D., being sound in mind and in body, and knowing my years are numbered, do will and bequeath to Mrs. Jane Ainsworth for her own and individual use, all my real estate in Robertson County, State of Texas; and all my personal property, consisting of stock of every description, and other personal property consisting of goods of all kinds, and all moneys in bank.

"It is my desire that she shall see that on my death I will be buried at the Easterly Cemetery, in the State and county aforesaid, in appropriate manner, and that only my burial expenses shall be paid from my property.

"I also demand that this my last will and testament shall be kept secret, and that the envelope enclosing this document shall remain sealed until after my death, and if said envelope or enclosure be mutilated or opened before my death, then this will and testament will be of no force and effect in law, and that the property of all kinds, belonging to me will become the property of my brother, Geo. D. Briggs, of Galveston, Texas.

"In consideration of this last will and testament to Mrs. Jane Ainsworth, she is to attend and care for me in sickness, faithfully, or if disabled by any other cause . . . I also empower her to collect all accounts due me for her own use.

"Done this first day of March, A. D. 1904. Witness my hand using scroll for seal,

"Witness.    (L. S.)    W. B. Briggs, M. D."

About the last day of December, 1905, Dr. Briggs died, and on March 20, 1906, Geo. D. Briggs propounded for probate the will dated March 19, 1895. On April 14, 1906, Samuel Ainsworth propounded for probate the will dated March 1, 1904. After trial in the County Court the proceedings were removed by appeal to the District Court, where, upon trial, judgment was rendered refusing to probate the latter will and probating the former as the will of Dr. Briggs. Ainsworth has appealed, and the only question for decision is which of the two wills should have been probated as the last will and testament of Dr. Briggs.

The undisputed testimony shows that both wills were entirely in the handwriting of Dr. Briggs, and that the first one was found in the deceased's trunk, where he kept his valuables. The other will was found in Dr. Briggs' residence, in the room where he died, located on a table and under or among a lot of old letters, circulars, medical journals and other papers of no value. It was not in an envelope, and did not appear to have ever been folded or enclosed in an envelope.

There was conflict in the testimony as to what had been done by Mrs. Jane Ainsworth in the way of caring for and nursing Dr. Briggs, but we do not regard that testimony of any importance in determining the question under consideration. The testimony indicates that the property bequeathed to Mrs. Ainsworth by the last will included all the property owned by the deceased at the time of his death; and therefore if that will is valid, it revokes the former will.

Counsel for appellee contend that the trial court's judgment should be upheld, because the last will shows on its face that it was incomplete, and that the testator, instead of having it completed, cast it aside as an abandoned and worthless paper. The only thing tending to show incompleteness on the face of the paper is the word "Witness," at the bottom of the will, and the absence of signatures after or under that word. The argument is that the testator prepared the instrument with a view to having it witnessed, and not intending that it should take effect as his last will until one or more witnesses had signed it at his request.

There are authorities which hold that the natural inference to be drawn from an attestation clause at the foot of a testamentary paper is that the writer intended to execute it in the presence of witnesses, and considered it incomplete until that operation was performed. Some of the authorities hold that the rule referred to has application even where witnesses are not essential to the validity of a will. However, the authorities which so hold state that the

presumption against such unattested instrument is but a slight one, and is overcome by evidence showing an intention that the instrument should operate in its existing state, or that the testator was prevented by uncontrollable circumstances from completing the same. (30 Am. & Eng. Ency. Law, 593, and authorities there cited.) In Perkins v. Jones, 84 Va., 361, the doctrine that an unsigned attestation clause will raise a presumption against the validity of a will, although subscribing witnesses be not required, is controverted; and it is there held that as witnesses were not required to render valid a holographic will, an unsigned attestation clause did not affect the validity of the will, nor constitute any obstacle to its probation. There are some other decisions to the same effect cited in a note to the text just referred to in the Encyclopedia. The Virginia case presents with considerable force the argument that when a person has done all that is required by a statute governing the subject to constitute a valid will, the fact that he may, on account of a misapprehension of law, intend to have something else done, can have no effect in determining the validity of the instrument. In other words, that an intention to do more than the law requires will not render nugatory full performance of all legal requirements. That argument, applied to this case, would run as follows: Our statute dispenses with subscribing witnesses when the will is written by the testator. Therefore when Doctor Briggs finished writing the instrument under consideration and signed his name to it, it became his valid will that very instant, and nothing thereafter done by him short of revocation could affect its legal status. There is much force in that argument, but the numerical weight of authority seems to be against it.

We do not regard it as necessary to determine which line of decisions is correct, because if the one relied on in support of the judgment in this case be correct, we think it must be held that the presumption arising from the unsigned attestation clause was overcome by the testimony of two disinterested witnesses, both of whom testified that not very long before his death Dr. Briggs told them that he had willed all of his property to Mrs. Ainsworth. The fact that the last will was found in a less secure place than the one written years before, is of little importance in determining its validity. Unlike deeds, delivery is not essential to the execution or validity of a will; and when an instrument has been executed in such manner as to constitute a valid will, it remains such will until revoked by the making of a subsequent will, or by the testator's destroying, cancelling or obliterating the same, or causing it to be done in his presence. (Rev. Stats., art. 5337.)

The instrument under consideration was found in possession of the deceased; it was wholly written by him, and two disinterested witnesses testified that he told them that he had willed all of his property to Mrs. Ainsworth, the beneficiary named in that instrument. This being the case, should it be rejected and disallowed as the last will of the testator merely because after he had signed it he wrote the word "Witness," and did not procure anyone to sign

it as a witness? We think not, and hold that the court was not justified, upon the ground referred to, in refusing to probate that instrument.

Nor can the judgment of the trial court be sustained on account of the clause in the will relating to its enclosure in an envelope and demanding that the will be kept secret. That clause is inartistically framed, and is, in some respects, mysterious, if not doubtful. It demands secrecy, but does not indicate upon whom the demand was laid. It must have been written with the intention of enclosing the document in a sealed envelope, but it fixes no penalty, except for opening or mutilating the envelope. It was not shown that it was ever in fact enclosed in an envelope, and it was shown that neither Mrs. Ainsworth nor her husband had any knowledge of the existence of the instrument until it was found after the death of Dr. Briggs. It does not render the validity of the will conditional upon any person's keeping a knowledge of the will secret, or upon the will's being found after his death in a sealed envelope, and the only condition prescribed as an avoidance is, as before said, opening or tampering with the envelope in which the testator seems to have intended to enclose the instrument. However, while it is stated that in that event "this will and testament will be of no force and effect in law," that statement is followed immediately by this language: "and that the property of all kinds belonging to me will be the property of my brother, George D. Briggs, of Galveston, Texas." While the first clause just quoted, if it stood alone, might render the will conditional, the other clause quoted shows that it was merely the testator's intention to render the bequest to Mrs. Ainsworth conditional and subject to forfeiture, in the event of the envelope's being opened or mutilated; and that, upon the happening of such event, the bequest to Mrs. Ainsworth should be shifted and go to the testator's brother George, and this by force of the instrument itself. Such being the case, the validity of the will under consideration is not affected by the clause referring to the envelope in which it was intended to enclose the will. The will under consideration devised all of the testator's property either to Mrs Ainsworth or to his brother George. The testator had the right to make bequests in the alternative, and the fact that he did so can afford no reason for not probating the will.

In determining whether or not an instrument should be probated as a last will, the courts are not required to construe the instrument and determine the rights of all parties claiming under it any further than is necessary in order to determine whether or not the particular instrument constitutes the last will of the alleged testator.

What has just been said disposes of the contention that the will itself is contingent or conditional, on account of the clause reading, "In consideration of this last will and testament to Mrs. Jane Ainsworth she is to attend and care for me in sickness, faithfully, or if disabled by any other cause." We express no opinion as to whether the language referred to was intended to make the bequest to Mrs. Ainsworth contingent upon the performance of certain things by her. A conditional bequest does not affect the validity of a will

in such manner as to prevent its probate.  Such clauses affect only the particular bequests to which they relate, and their construction and the rights of the parties under such clauses are not involved until after the will has been probated, and the court enters upon the duty of awarding the estate to the devisees in accordance with the terms of the will.

Upon the undisputed facts contained in the record, our conclusion is that the last will made by Dr. Briggs, dated March 1, 1904, should have been admitted to probate; and therefore the judgment will be reversed and cause remanded with instructions to the District Court to render judgment to that effect.

*Reversed and remanded.*