**FRAME v. WHITAKER et al. (No. 7996.)**

Court of Civil Appeals of Texas. San Antonio.
May 2, 1928.

Rehearing Denied June 6, 1928.

**1. Executors and administrators ⚖7—Provision in will for no action other than probating will and return of inventory, appraisement, and claims is known as an "independent executorship" (Rev. St. 1925, art. 3436).**

Where will, pursuant to Rev. St. 1925, art. 3436, provides that no other action shall be had in relation to settlement of estate other than probating and recording will and return of inventory, appraisement, and list of claims of estate, it constitutes an "independent executorship," and provision may be made in will that no bond shall be required of executor, although not so designated in statutes.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Independent Executor.]

**2. Executors and administrators ⚖7—Independent executor can act independently under powers granted by statute or will, while one under direction of court must act under orders of court.**

The only difference between an independent executor and one under direction of court is that the first can act independently under powers granted by statute or will, while others may act under orders of court, and both are governed by authority given by will or statute; rule being to ascertain and follow intention of testator.

⚖For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. Wills ⊜125—Note executed by testator to wife, not shown to be entirely in testator's handwriting and not attested by two witnesses, held not codicil.**

The same solemnities are required as to a codicil as to the original will, and a note executed by testator to his wife, not shown to have been entirely in handwriting of testator and not attested by two witnesses and showing no desire by testator to revoke or change any part of will, did not constitute a codicil.

**4. Wills ⊜167—Statutory methods must be followed to revoke will (Rev. St. 1925, art. 8285).**

Under Rev. St. 1925, art. 8285, in order to revoke a will, the statutory methods must be followed.

**5. Mines and minerals ⊜73—Oil lease is conveyance of "interest in land" and separates title to oil and gas from that of soil.**

An oil lease giving lessee exclusive right to enter on land and dig for and appropriate oil and gas in the soil conveys to him a title to the same and separates the title to the same from that of the soil and is a conveyance of an interest in land.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interest (In Property).]

**6. Wills ⊜194—Execution of oil and gas lease by testator held not revocation of bequest to wife of life estate under prior will as to such minerals.**

Execution by testator of oil and gas lease did not have effect of revoking bequest to wife in prior will of life estate in land with power of disposition by will, in so far as the minerals were concerned, since when wife obtained life estate under will, she became owner of interest in minerals beneath its soil when life estate accrued.

**7. Life estates ⊜12—Right of life tenant to interest in minerals held not to include royalties becoming due before life estate vested.**

Right of life tenant to interest in minerals in land on life estate accruing does not include royalties which became due before life estate in land vested, but such royalties were part of estate and as such would be under management and control of executor who alone has power to collect royalties and distribute them.

**8. Life estates ⊜28—Life tenant cannot sue for oil and gas royalties accruing before life estate vested or to cancel oil and gas lease for matters occurring before such vesting.**

Wife, as life tenant, not being entitled to royalties from oil and gas which became due before life estate vested in her, *held* without power or authority to institute suit for royalties accruing before death of husband, nor has she right to cancel oil and gas lease on account of matters happening before death of husband.

**9. Trial ⊜171—Court after sustaining plea in abatement and to the jurisdiction properly overruled defendant's motion for instructed verdict.**

Where court properly sustained defendant's plea in abatement and to the jurisdiction and ruled that plaintiff was not authorized to institute suit, it properly overruled defendant's motion for an instructed verdict.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Action by Fannie S. Frame against W. W. Whitaker and others. Judgment of dismissal, and plaintiff appeals. Affirmed.

T. H. Ridgeway, of San Antonio, for appellant.

Huson & Huson, of San Antonio, for appellees.

FLY, C. J. Fannie S. Frame, for herself and as guardian of the estate of her minor child, Betty Lu Frame, brought this action against W. W. Whitaker and G. W. Whitaker to cancel and annul a certain oil, gas, and mineral lease of a certain tract of land containing 328.25 acres, executed by D. A. Frame and appellant, Fannie S. Frame, his wife, to appellees and C. V. McBeth, of Tulsa, Okl., the latter having transferred his interest in the lease to W. W. Whitaker. Appellant alleged a failure to comply with the lease contract on the part of appellees which was made the basis of the cancellation sought by her. The court sustained a plea in abatement and to the jurisdiction after the evidence had been adduced, and after the same pleas had been overruled before the evidence was heard, and the cause was dismissed. A motion by appellees for an instructed verdict was overruled, of which action complaint is made in this court.

It is alleged in the petition that Fannie S. Frame is the guardian of her minor daughter, Betty Lu Frame, that the mother owns five-sixths of the property and the minor the remaining one-sixth, upon which the lease was executed by David A. Frame and Fannie S. Frame, on October 17, 1918, to the Whitakers and McBeth. It was alleged that David A. Frame died on May 1, 1925, leaving a will which was duly admitted to probate, in which the land in question was bequeathed to his wife, appellant herein, but that, the said minor having been born after said will had been executed, she was entitled under the laws of Texas to a one-sixth interest in the land. The son of a former marriage, E. W. Frame, was appointed independent executor of the estate of his father.

Evidence was heard in testing the plea in abatement and to the jurisdiction of the court. Appellees filed a general demurrer and twenty-two special exceptions to the petition and an elaborate answer covering some ten pages of the transcript. The exceptions were overruled.

In the plea in abatement it was alleged that only a life estate with power of alienation by will was bequeathed to Fannie S. Frame by the will of David A. Frame, de-

---

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ceased, that the will was probated, that subsequent to the making of the will a codicil thereto was made, but said codicil was not probated, that the codicil has been sued on as a contract by appellant against E. W. Frame, executor of the will and is now pending. In the second paragraph of the plea in abatement it is alleged that the independent executor, knowing all the facts surrounding the oil lease, refused to join in the suit, although he, if any one, is the proper person to prosecute this suit. It was also alleged that the appellant was seeking to oust the county court of its jurisdiction and deprive the independent executor of his jurisdiction. It was alleged that the oil lease was made after the will had been made by David A. Frame, and such lease had the effect of taking the minerals in the land out of the scope and effect of the terms of the will, and so far as such minerals were concerned the will was revoked and adeemed, and that there was a defect as to parties plaintiff.

[1, 2] Under the provisions of article 3436, old Nos. 3362 and 1995, a person may provide in his will that no other action shall be had in the county court in relation to the settlement of his estate than the probating and recording of his will and the return of an inventory, appraisement, and list of claims of the estate. That constitutes what is known in opinions of courts and among attorneys denominated an "independent executorship"; and provision may be made in a will that no bond shall be required of the executor, although not so designated in the statutes. Dwyer v. Kalteyer, 68 Tex. 554, 5 S. W. 75. It is the rule that the only difference between an independent executor and one under direction of the court is that the first can act independently under the powers granted by statute or will, while the other must act under the orders of a court. Both are governed by the authority given by will or statute. The rule in all cases is to ascertain and follow the intention of the testator. Orr v. O'Brien, 55 Tex. 149; Blanton v. Mayes, 58 Tex. 422; Altgelt v. Sullivan (Tex. Civ. App.) 79 S. W. 333; Roy v. Whitaker, 92 Tex. 346, 48 S. W. 892, 49 S. W. 367. It follows that the necessity or not of making the executor a party to a suit instituted by one of the devisees is the same as to one class of executors as the other, and if an executor acting under the provisions of the will of David A. Frame had been acting under orders of a court would be a necessary party in this action, then the independent executor would be a necessary party. There were no debts due by the estate, unless $5,000 claimed by appellant be taken into consideration, and it does not appear among the list of claims due by the estate. While this is true the will contemplated action by the independent executor in selling property to provide for the payment of several bequests made to grandchildren as well as to other bequests. However, the independent executor refused to join appellant as alleged in her pleadings as well as those of appellees, and the question is, Would she be authorized and empowered to sue in her own name? Crain v. Crain, 17 Tex. 80; Rogers v. Kennard, 54 Tex. 30; Lee v. Turner, 71 Tex. 264, 9 S. W. 149.

[3] The life estate, with power of disposal by will, was a specific devise, and it was evidently the intention of the testator to vest title in the devisee, superior to any other devise, and when the will was probated it became the property of appellant and not subject to any action on the part of the executor, unless it be as to the oil lease. No debts were shown to exist against the estate unless the note given by David A. Frame to his wife could be held to be a debt. In this connection it may be said that the note given by David A. Frame to his wife, in 1922, had none of the earmarks of a codicil to a will. It was not shown to have been entirely in the handwriting of the testator, and was not attested by two witnesses. The same solemnities are required as to a codicil as to the original will. Magee v. Magee (Tex. Civ. App.) 272 S. W. 252.

There is no reference to the will in the note, and, while it is provided that it shall be paid six months after the death of the testator, there is nothing to indicate that the maker intended it to be made a part of his will. On the other hand, it seems to have been the desire of the maker that it should not be a charge on his estate, for it is provided that it should not constitute a lien against the estate. In the case of Simon v. Middleton, 51 Tex. Civ. App. 531, 112 S. W. 441, the detached paper was held to be a codicil, as it referred to the will and made a bequest, but it was held to not be revocatory of anything in the will. As said in that case, there is not a single word in the note given by David A. Frame that showed any desire to revoke or change any part of the prior will executed by him. The court overruled the plea in abatement and to the jurisdiction when first presented, but after hearing the evidence presented by appellant, set aside the order overruling the plea and granted the plea and dismissed the cause.

At the conclusion of appellant's testimony appellees moved the court to instruct a verdict for appellees, but the plea to the jurisdiction and plea in abatement were again taken up, the former order overruling such pleas set aside, the pleas sustained, and the cause dismissed. After the order of dismissal the court overruled the motion to instruct a verdict for appellees, and to that action they excepted.

[4-7] It is provided in article 8285, Revised Statutes of 1925, a substantial re-enactment of article 7859, Statutes of 1914:

"No will in writing, made in conformity with the preceding articles, nor any clause thereof

or devise therein, shall be revoked, except by a subsequent will, codicil or declaration in writing, executed with like formalities, or by the testator destroying, canceling or obliterating the same, or causing it to be done in his presence."

In order to revoke a will, the statutory methods must be followed. Morgan v. Davenport, 60 Tex. 230; Brackenridge v. Roberts, 114 Tex. 418, 267 S. W. 244, 270 S. W. 1001. Of course, if the testator disposed of the property or any part of it by deed or other instrument, there would be nothing for the will to take effect upon—the bequests would amount to nothing because there was no property that could be bequeathed. Williams v. Claunch, 44 Tex. Civ. App. 25, 97 S. W. 111. It is contended that the execution of the oil and gas lease to appellees had the effect of revoking the bequest of the land so far as the minerals are concerned. A number of authorities are cited by appellees to sustain that proposition, but none of them, we think, sustains any such proposition. It is true that the rule is well established that an oil lease giving the lessee exclusive right to enter on land and dig for and appropriate oil and gas in the soil conveys to him a title to the same and separates the title to the same from that of the soil. Such lease is a conveyance of an interest in the land. Stephens County v. Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566. That conveyance, however, does not destroy a bequest of the land as a conveyance to the surface soil would do, and could not affect such bequest except to burden it with a lease in the same manner that the land was burdened during the life of the testator. It would not revoke the will as to the land, nor would it deprive the devisee of any rights accruing from the lease. The estate in the minerals was not segregated from the soil, and, when the will placed the title to the land in appellant, her interest in the minerals went with it just as they would have done under deed made to any one of a life estate by the testator. It is said by Thornton in the Law of Oil and Gas:

"If oil or gas wells exist on a tract of land and a person be given a life estate therein, he is entitled to the oil and gas, and he may maintain an action in equity for an accounting of the royalties due him" (citing Woodburn's Estate, 138 Pa. 606, 21 A. 16, 21 Am. St. Rep. 932; Koen v. Bartlett, 41 W. Va. 559, 23 S. E. 664, 31 L. R. A. 128, 56 Am. St. Rep. 884; Wilson v. Youst, 43 W. Va. 826, 28 S. E. 781, 39 L. R. A. 292; Blakley v. Marshall, 174 Pa. 425, 34 A. 564).

The owner of the surface is the owner of the gas and oil beneath it to the extent of his interest, and when appellant obtained a life estate, under the will, to the land, she became the owner of an interest in the minerals beneath its soil when her life estate accrued. This rule would not include the royalties which became due before the life estate in the land vested in her. Those royalties were a part of the estate, and as such would be under the management and control of the executor.

The case of Swayne v. Lone Acre Oil Co., 98 Tex. 597, 86 S. W. 740, 69 L. R. A. 986, 8 Ann. Cas. 1117, is quite pertinent to the issues in this case. In that case it was held that a person entitled to a certain life interest in an estate would be entitled to receive an interest in the oil corresponding to his life interest in the amount of the net proceeds of the oil extracted and marketed after deducting all expenses of producing and marketing, invested or put at interest, and receive only the interest thereon during his life, the corpus of the fund at the death of the owner of the life estate to belong to the remaindermen. That case would govern as to oil hereinafter produced, and while appellant and her minor child, of whose estate she is the guardian, own the whole life estate, we see no reason why the rule laid down in the Swayne Case should not obtain. Such being the case, the independent executor alone, it would seem, should have the power and authority to collect the royalties and distribute them to those owning a life estate in the property. This would be necessary in order to protect the interests of the remaindermen in the estate. We cannot assume that Mrs. Frame will make a will so as to deprive remaindermen of their estate in the oil.

[8] It follows from our conclusions hereinbefore stated that Mrs. Frame had no power or authority to institute a suit for the royalties accruing before the death of her husband, because they are a part of his estate to be distributed among the heirs, and that she had no right to cancel the lease on account of matters happening before the death of her husband. The independent executor alone could perform that duty or exercise that power. If there should be a breach of the lease contract after she entered into her life estate and the executor should refuse to join her in enforcing her rights, she could prosecute the suit.

[9] The court having properly ruled that appellant was not authorized to institute the suit, a verdict for appellees could not be instructed.

The judgment is affirmed.