Patrick McHugh et al. v. Nicholas Gallagher.

No. 376.

1. **Trust.**—See instrument not of that indefinite character that courts will not give it effect.

2. **Construction of Instrument.**—See document held to partake of the nature of a purchase of the remainder after a life-estate has terminated; having some of the elements of a conveyance of bargain and sale and some of the features suggesting that its purpose was testamentary.

3. **Same—Intent to be followed.**— In construing such instrument we are to look to the intent of its makers, and when possible such intent is to be gathered from its face. When the meaning is uncertain, as in this case, resort should be had to the circumstances of the transaction. Evidence for this purpose is admissible.

4. **Same.**—Evidence should have been heard of the circumstances of its execution, not to contradict the terms of the instrument, but to explain its purpose and meaning, in order to arrive at the intent of the makers.

5. **Practice on Demurrer.**—In such case the court should not on demurrer determine the intent of the makers. Testimony should be heard.

Appeal from Travis.   Tried below before Hon. James H. Robertson.

This is an agreed case. The appellants claimed as heirs of Joseph Limerick. The defendant claimed under an instrument executed by Limerick and wife, which was set up in the petition.

A demurrer by the defendant was sustained. Plaintiffs declined to amend and judgment was rendered for the defendant; and plaintiffs appealed.

The instrument which was passed upon by the trial court and is discussed on appeal, is as follows:

"*The State of Texas, County of Travis.*—This indenture made this the twenty-fourth day of February, A. D. 1887, by and between Joseph Limerick and his wife Elizabeth Limerick, of Austin, and State and county aforesaid, parties of the first part, and Eugene Bremond, of the city of Austin, State and county aforesaid, party of the second part, witnesseth:

"Whereas the said parties of the first part, said Joseph Limerick and his wife Elizabeth Limerick, being fully impressed with the necessity of so husbanding the property earned and owned by them, so that they may derive a support therefrom in their old age, which can be best accom-

plished by their placing all their property in the hands of an active business man; and whereas said Eugene Bremond, the party of the second part, has been their adviser and friend for the past thirty-seven years.

" Now this indenture witnesseth, that the said parties of the first part, in consideration of the sum of $10 to them in hand paid by the said party of the second part, and the further consideration of the care and oversight to be used in the management and control or sale or sales of said property by said party of the second part, do by these presents grant, sell, and convey to the party of the second part the following described real estate, situated in the county of Travis and State of Texas and city of Austin, to-wit:

" Lots numbers four (4), five (5), six (6), fifteen (15), sixteen (16), seventeen (17), eighteen (18), nineteen (19), twenty (20), twenty-one (21), twenty-five (25), twenty-six (26), twenty-seven (27), twenty-eight (28), thirty-three (33), thirty-four (34), thirty-five (35), thirty-six (36), thirty-seven (37), thirty-eight (38), thirty-nine (39), forty (40), forty-one (41), forty-two (42), forty-eight (48), forty-nine (49), fifty (50), and sixty (60), in outlot forty-one (41) of division " B;" also one and one-third ($1\frac{1}{3}$) acre of southeast corner of said outlot forty-one (41) in division ' B ' of said city of Austin, Texas; also lots numbers three (3) and four (4) in block one hundred and fourteen (114); lot number two (2), block number one hundred and forty (140), and lots numbers seven (7) and eight (8) in block number one hundred and forty-two (142) of said city of Austin, Texas.

" These figures and designations being made according to the map of said city of Austin, now on file in the General Land Office of the State of Texas.

"Also one tract of land in Tom Green County, known as survey 679, in the name of. C. Wetz, and abstract No. 4005, reference to which is hereby being made for a fuller description of said land; also 100 acres of land out of the J. A. Tanner league, in Lee County, Texas, conveyed to said Limerick by Mary Wells on October 22, 1885, deed recorded in volume K, page 281, records of said Lee County, Texas; and all other real estate or property whatsoever situated, owned by said parties of the first part or either of them; in trust, however, for the following purposes:

" First. All the rents and proceeds of sales arising [from] the renting or selling of any of said real estate herein conveyed (after payment of the taxes assessed thereon, insurance premiums, and expenses of management) shall be used by the said party of the second part for the support and maintainance of the said parties of the first part during their lives.　On the death of either of said parties of the first part, then said receipts are to be used for the support and maintainance of the survivor of the said parties of the first part.

"Upon the decease of the survivor of the said parties of the first part, then the said party of the second part, the said Eugene Bremond, is to make such disposition of the real and personal property of herein conveyed to him as then be in his possession as to him may seem best.

"In order to better secure the support and maintenance of the said parties of the first part, they, the said parties of the first part, do hereby authorize and empower the said Eugene Bremond, the said party of the second part, to grant, bargain, sell, and convey the said real estate and lands hereinbefore conveyed to him, or any part thereof, for such price and upon such terms as to him, the said Eugene Bremond, party of the second part, shall seem meet; to make, execute, acknowledge, and deliver in his own name deeds therefor, which said deeds shall be legal, good, and valid conveyances in fee simple of any land or lands by him, the said party of the second part, so sold and conveyed; and the said party of the second part hereby accepts said trust.

"Witness our hands, this the 24th day of February A. D. 1887.

his
"JOSEPH X LIMERICK.
mark.
"ELIZABETH LIMERICK.
"EUGENE BREMOND.

"Witnesses: JOHN NAGLE."

*Walton, Hill & Walton,* for appellants.—The issues involve identically the same questions of law, and they will all be treated under this proposition:

The instrument is a trust deed made for an express and specific purpose, placed on the trustors' own property. The trust was executed without consuming the trust property, and there are no words in the instrument that passes the fee in the property to the trustee on the death of the trustors; nor is there named any person, thing, or use with sufficient certainty for them or it to take under said instrument the surplus of the property after the execution of the express trust.

The instrument consists of the following substantial parts:

1. Consideration $10.

2. Words of conveyance.

3. But the conveyance is in trust for a specific purpose, viz.: "In trust, however, for the following purposes:

"First. All the rents and proceeds of sale arising from the renting or selling of any of said real estate herein conveyed, after payment of the taxes assessed thereon, insurance premiums, and expenses of management, shall be used by the said party of the second part (Bremond) for the support and maintenance of the said parties of the first part (trustors) during their lives; on the death of either of said parties of the first part, then

said receipts are to be used for the support and maintenance of the survivor of the said parties of the first part; upon the decease of the survivor of the said parties of the first part, then the said party of the second part, the said Eugene Bremond, is to make such disposition of the real and personal property of herein conveyed to him as there be in his possession, as to him may seem best."

4. There is then appended as part of the instrument a full power of attorney from them to the trustee to act in the premises, in order, as they say, "to better secure their support and maintenance."

5. In the next year, 1888, Elizabeth Limerick died, and her husband soon followed her.

6. Bremond, the trustee, after the death of his trustors, gave away to the Catholic Church in Austin the property which is embraced in this suit.

7. The trustors had no children; appellants being of the collateral blood.

8. Those who claim to be the heirs of Joseph Limerick bring this suit, and were demurred out of court on the ground that the petition failed to show an interest in the property, because the fee had gone into Eugene Bremond on the making and delivery of writing herein before set out, and which is here subjected to construction by the court.    Peet v. Railway, 70 Texas, 525, 526, 527; Perry on Trusts, secs. 24, 308, 334, 511a, 920; Flint on Trusts, secs. 3, 208, 334, 343; Boone on Mort., secs. 14, 227, and notes; 1 Redf. on Wills, 170, 171, et seq., subdivs. 7, 8, 9, 10, 11, 12; Brown v. Shands, 1 McCord, 409; Dev. Deeds, secs. 5, 64, 176, 190, 211, 213, 1010, et seq.; 5 Am. and Eng. Encyc. of Law, 423, 433, 438; Wright v. Lancaster, 48 Texas, 251; Ingell v. Nooney, 13 Am. Rep., 435; Mc-Kinney v. Settles, 31 Mo., 541; Tied. on Real Prop., secs. 782, 799, 827, 841, and note; Jackson v. Seibring, 16 John., 515; Martind. on Conv., secs. 82, 83, 87, et seq., and notes; Washb. on Real Prop., 341, and notes; Knowles v. Torbitt, 53 Texas, 558; Rainbolt v. March, 52 Texas, 249; Norris v. Hunt, 51 Texas, 613; 8 Am. Dec., 357, and notes; Nolte v. Meyer, 79 Texas, 356; Heidenheimer v. Bauman, 84 Texas, 174.

"Without a certain beneficiary (in or to the trust) who can claim, its enforcement is void.    Tilden v. Green, N. E. Rep., 882.    Here is the language that is denounced: "Such charitable, educational, and scientific purposes as in the judgment of my executors will render said residue of my property widely and substantially beneficial to mankind."    The language of the instrument at bar is, "as to him may seem best."

*Terrell & Walker*, for appellee.—The instrument executed by Joseph Limerick and Elizabeth Limerick, on February 24, 1887, vested in Bremond the absolute title to the property therein described, burdened only with the express trust that its rents and proceeds should be applied by him to support Joseph Limerick and his wife during their lives, and

Bremond's deed to appellee, made after the death of the grantors, conveyed title.

1. The instrument to which this proposition applies is herein before set forth in full.

2. It recites that the grantors were "fully impressed with the necessity of so husbanding the property earned and owned by them as that they might derive support therefrom in old age."

3. It recites that Bremond had been "their adviser and friend for thirty-seven years."

4. It recites the consideration of $10, and the "further consideration of care and oversight to be used in the management and control or sale or sales of said property" by Bremond.

5. It describes the property to be conveyed, and declares that the grantors "grant, sell, and convey" the same to Bremond, "in trust, however," for certain purposes.

6. The trust declared in the instrument was that the rents or proceeds of sale should be applied to support Limerick and wife and the survivor of them.

7. The instrument, after declaring the trust, proceeds: "Upon the decease of the said parties of the first part, then the said party of the second part, the said Eugene Bremond, is to make such disposition of the real and personal property herein conveyed to him as then be in his possession as to him may seem best."

8. The instrument closes with this declaration: "In order to better secure the support and maintenance of said parties of the first part, they, the said parties of the first part, do hereby authorize and empower the said Eugene Bremond, the party of the second part, to grant, bargain, sell, and convey the said real estate and lands herein before conveyed to him, or any part thereof, for such price and upon such terms as to him, the said Eugene Bremond, party of the second part, shall seem meet; to make, execute, acknowledge, and deliver in his own name deeds therefor, which deeds shall be legal, good, and valid conveyances in fee simple of any land or lands by him, the said party of the second part, so sold and conveyed; and the said party of the second part hereby accepts said trust."

9. Bremond signed the deed with the Limericks. Rev. Stats., art. 551; 4 Kent's Comm., 461; Bell County v. Alexander, 22 Texas, 357; Martin v. Parker, 26 Texas, 260; Ryan v. Jackson, 11 Texas, 402; Dillaye v. Greenough, 45 N. Y., 444; Dow v. Gould, 31 Cal., 649; Johnson v. Cushing, 15 N. H., 298.

FISHER, Chief Justice.—This is a suit by appellants as the heirs at law of Joseph Limerick and his wife Elizabeth Limerick, against appellee, to recover certain property described in an instrument set out in

plaintiff's petition, under which they allege the appellee claims title. They declare against this instrument, and say that it conveys no title to Eugene Bremond, the immediate vendor of appellee.

A demurrer was addressed to the petition, which was sustained by the court, and judgment thereupon rendered, from which this appeal is prosecuted.

The evident reason why the court sustained the demurrer was, that it regarded the instrument as a conveyance from Joseph Limerick and his wife to Bremond, and vested the property sued for in him.

The sole question that we consider is whether the court erred in sustaining the demurrer.

We do not think that the instrument is of that uncertain and indefinite character of trust that the courts will decline to give effect to. But we are in doubt as to the meaning and legal effect of the instrument as operative as a conveyance, or whether testamentary in character.

It partakes of the nature of a purchase of the remainder after the life-estate has terminated, and has some of the elements of a conveyance of bargain and sale, and also some of its features suggest that its purpose was testamentary.

In construing the instrument we are to look to the intention of its makers, and when it is possible such information should be gathered from the face of the instrument; but when the instrument is uncertain in meaning, and its language ambiguous or of doubtful construction, resort should be had to the surrounding facts and circumstances that tend to show the meaning and purpose of the makers in executing the instrument. Evidence for this purpose was admissible under the pleadings, and the meaning of the instrument being doubtful and uncertain, the court should have heard evidence of such facts and circumstances connected with its execution as would tend, not to contradict the terms of the instrument, but to explain its purpose and meaning, in order to arrive at the intent of the makers. Ferguson v. Ferguson, 27 Texas, 340; Rogers v. Kennard, 54 Texas, 33; Grimes v. Watkins, 59 Texas, 139; Hunt v. White, 24 Texas, 652.

The court erred in sustaining the demurrer. The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered October 19, 1892.

Justice Key, being disqualified, did not sit in this case.

Motion for rehearing refused.